COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-05-454-CV

 

 

IN THE INTEREST OF J.A., A CHILD                                                       

 

                                                                                                        

 

                                              ------------

 

           FROM
THE 323RD DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------








This is an appeal from the
termination of parental rights to J.A.,[2]
a child.  Appellant, the mother,
complains in nine points that the trial court abused its discretion in denying
her motion for a continuance and for an extension of the dismissal date and
that the evidence is legally and factually insufficient to support the
termination of her parental rights.  We
affirm.

FACTUAL BACKGROUND

Appellant gave birth to J.A.
in April 2002.  In 2003, she was arrested
twice for misdemeanor theft.[3]  She received one year=s probation for the first misdemeanor, but because she was unable to
pay her fines, her probation was revoked and she served time in the Tarrant
County jail.  J.A. stayed with Appellant=s uncle while Appellant served this sentence.  For the other misdemeanor offense, Appellant
served one day=s jail time
in Irving and then was released to perform community service, which she never
completed.








CPS investigated several
allegations of neglectful supervision made in 2003 and 2004,[4]
around the time that Appellant started abusing drugs and alcohol.[5]  CPS started a service plan for Appellant in
early 2004 and sent J.A. to live with Appellant=s uncle for three to four months.[6]








Appellant testified that her
CPS worker gave permission for J.A. to be returned to her custody,[7]
and shortly thereafter, she moved and did not complete her parenting
classes.  She admitted to using
methamphetamine on the weekends while she was still J.A.=s primary caretaker.[8]  She was arrested twice in 2004 for
methamphetamine possession, once while pregnant with another child.  She received three years= deferred adjudication community supervision for the July 2004 drug
arrest.  She testified that she was
unaware that she was pregnant when she was arrested in September 2004 and that
she used methamphetamine four or five times even after she realized she was
pregnant.  At that child=s birth, on January 17, 2005, she and the baby both tested positive
for methamphetamine.  She offered that
baby for adoption and lied to CPS about J.A.=s whereabouts.[9]








Once CPS found J.A., he was
removed from Appellant=s custody,
and she increased her methamphetamine use to a few times a week.[10]  CPS developed a new service plan for her,
which included four months of outpatient drug rehabilitation, parenting
classes, and Narcotics Anonymous meetings. 
Appellant testified that she did not receive the plan until mid February
or almost March 2005.[11]  She testified that the psychological
examination appointment was scheduled for May, and the parenting classes were
backlogged.  Appellant stated that she
failed to complete the rest of the service plan due to a lack of
transportation, but admitted that twice she showed up high on methamphetamine
for visitation with J.A.  There was
disputed testimony about whether she stood J.A. up for a visit on his
birthday.  It is undisputed that because
she missed at least one visit, CPS put in a restriction that she had to
actually show up at the office first before J.A. would be brought to see her.

Appellant was arrested around
April 28, 2005, and incarcerated for thirty-three days for failing to stay
current on her probation fees.  She was
incarcerated again in June for testing positive for methamphetamine.  A motion was filed to revoke her probation on
the September 2004 possession offense, but she was allowed to participate
instead in the six-month Substance Abuse Felony Program (ASAFP@).  By the termination trial on December 5, 2005,
Appellant had served three months in the SAFP program.

Appellant claims that other
than her CPS caseworker, Christy Wright, who left on maternity leave in late
September 2005, no one from the State looked into Appellant=s SAFP participation.  While
Wright was on maternity leave, her cases were divided among her coworkers, and
a new supervisor took over.[12]  Appellant sent Wright a letter dated August
16, 2005, asking about visitation and contact with J.A., and a letter dated
September 5, 2005, making the same requests. 
She testified that her last contact with Wright was in May 2005.








Appellant testified that
while in SAFP, she attended parenting classes, Narcotics Anonymous, and
self-help meetings, and she received counseling. She testified that after
completing SAFP, she would be required to spend up to three additional months
in a halfway house.  She did not know which
halfway house facility or whether she would be admitted to one that would allow
her to keep J.A. with her.  Appellant
testified that if her motion for a continuance and for an extension of the
dismissal date had been granted, her halfway house requirement would have been
completed by the time of trial.[13]  The court took judicial notice that a hearing
on that motion occurred on November 8, 2005. The hearing was not recorded.  The court denied the motion.

Wright testified that
terminating Appellant=s parental
rights to J.A. would be in J.A.=s best interest because:

[Appellant]
has not maintained significant contact with [J.A.] even when she did have the
opportunity prior to her goingCbeing incarcerated.  And even when she wasCprior
to her being incarcerated, she was still using drugs.  She was not making the changes that were
necessary in order to be able to provide for [J.A.]. 

 








Wright testified that when
asked if J.A. knew who his mother was, he pointed to the picture of his
then-foster parent.  J.A. is now in a
dual-licensed foster home; Wright testified that it was her understanding that his
current foster parents want to adopt him.

Appellant stated that she has
Aa disease of addiction.@  She testified, AI=m kind of
upset at myself for what I=ve done, but I=ve come to
the realization that, you know, it=s time to grow up and move forward and drugs are not the answer.@  When asked about her plans for
J.A., and what she would do differently, she testified:

First
of all, what I plan on doing is staying clean, as far away from drugs as
possible and alcohol, working a normal job, continuing to go to my treatment,
my groups; NAs and AAs, getting more involved with my family, getting closer to
my family, my aunt and uncle, instead of isolating myself, staying away from
any so-called friends that I thought I might have had and basically putting my
recovery first, always continuing to go to groups and treatments. 

 








Following a bench trial, in
its order of termination, the court determined that Appellant met the following
sections of the Texas Family Code: that she knowingly placed or knowingly
allowed J.A. to remain in conditions or surroundings which endanger his
physical or emotional well-being, under section 161.001(1)(D); engaged in conduct
or knowingly placed J.A. with persons who engaged in conduct which endanger his
physical or emotional well-being, under section 161.001(1)(E); and that she
constructively abandoned J.A., under section 161.001(1)(N).  Tex.
Fam. Code Ann. ' 161.001(1)
(Vernon Supp. 2006). The trial court also determined that termination of
Appellant=s parental
rights were in J.A.=s best
interest.[14]  Id. ' 161.001(2).  It ordered that
J.A. be placed with the Texas Department of Family and Protective Services (AState@) as
managing conservator for adoptive placement. 
Although requested, the trial court did not file findings of fact and
conclusions of law.

DISCUSSION








A parent=s rights to Athe
companionship, care, custody, and management@ of his or her children are constitutional interests Afar more precious than any property right.@  Santosky v. Kramer, 455
U.S. 745, 758‑59, 102 S. Ct. 1388, 1397 (1982); In re M.S., 115
S.W.3d 534, 547 (Tex. 2003).  AWhile parental rights are of constitutional magnitude, they are not
absolute.  Just as it is imperative for
courts to recognize the constitutional underpinnings of the parent‑child
relationship, it is also essential that emotional and physical interests of the
child not be sacrificed merely to preserve that right.@  In re C.H., 89 S.W.3d
17, 26 (Tex. 2002).  In a termination
case, the State seeks not just to limit parental rights but to end them
permanentlyCto divest
the parent and child of all legal rights, privileges, duties, and powers
normally existing between them, except for the child=s right to inherit. Tex. Fam.
Code Ann. ' 161.206(b);
Holick v. Smith, 685 S.W.2d 18, 20 (Tex. 1985).  We strictly scrutinize termination
proceedings and strictly construe involuntary termination statutes in favor of
the parent.  Holick, 685 S.W.2d at
20‑21; In re E.S.S., 131 S.W.3d 632, 636 (Tex. App.CFort Worth 2004, no pet.).

In proceedings to terminate
the parent‑child relationship brought under section 161.001 of the Texas
Family Code, the petitioner must establish one of the acts or omissions
enumerated under subdivision (1) of the statute and must also prove that
termination is in the best interest of the child.  Tex.
Fam. Code Ann. ' 161.001; In
re J.L., 163 S.W.3d 79, 84 (Tex. 2005). 
Both elements must be established; termination may not be based solely
on the best interest of the child as determined by the trier of fact.  Tex. Dep=t of Human Servs. v. Boyd, 727 S.W.2d
531, 533 (Tex. 1987).

A. 
Sufficiency Of The Evidence








Termination of parental
rights is a drastic remedy and is of such weight and gravity that due process
requires the petitioner to justify termination by clear and convincing
evidence.  Tex. Fam. Code Ann. '' 161.001, 161.206(a); In re J.F.C., 96 S.W.3d 256, 263 (Tex.
2002).  This intermediate standard falls
between the preponderance standard of ordinary civil proceedings and the
reasonable doubt standard of criminal proceedings.  In re G.M., 596 S.W.2d 846, 847 (Tex.
1980); In re K.W., 138 S.W.3d 420, 425 (Tex. App.CFort Worth 2004, pet. denied). 
It is defined as the Ameasure or degree of proof that will produce in the mind of the trier
of fact a firm belief or conviction as to the truth of the allegations sought
to be established.@  Tex.
Fam. Code Ann. ' 101.007.








The higher burden of proof in
termination cases elevates the appellate standard of legal sufficiency
review.  J.F.C., 96 S.W.3d at
265.  The traditional no‑evidence
standard does not adequately protect the parent=s constitutional interests.  Id.  In reviewing the evidence for legal
sufficiency in parental termination cases, we must determine whether the
evidence is such that a factfinder could reasonably form a firm belief or
conviction that the grounds for termination were proven.  Id. at 265‑66.  We must review all the evidence in the light
most favorable to the finding and judgment.  Id. at 266.  This means that we must assume that the
factfinder resolved any disputed facts in favor of its finding if a reasonable
factfinder could have done so.  Id.  We must also disregard all evidence that a
reasonable factfinder could have disbelieved. 
Id.  We must consider,
however, undisputed evidence even if it is contrary to the finding.  Id. 
That is, we must consider evidence favorable to termination if a
reasonable factfinder could, and disregard contrary evidence unless a
reasonable factfinder could not.  City
of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005).

This higher burden of proof
also elevates the appellate standard of factual sufficiency review.  C.H., 89 S.W.3d at 25.  A[A] finding that must be based on clear and convincing evidence cannot
be viewed on appeal the same as one that may be sustained on a mere
preponderance.@  Id. 
In considering whether the evidence of termination rises to the level of
being clear and convincing, we must determine whether the evidence is such that
a factfinder could reasonably form a firm belief or conviction that the grounds
for termination were proven.  Id.  Our inquiry here is whether, on the entire
record, a factfinder could reasonably form a firm conviction or belief that the
parent violated section 161.001(1)(D), (E), or (N), and that the termination of
the parent=s parental
rights would be in the best interest of the child.  Id. at 28.








The distinction between legal
and factual sufficiency lies in how we review the evidence.  J.F.C., 96 S.W.3d at 266.  In a factual sufficiency review, in
determining whether the evidence is such that a factfinder could reasonably
form a firm belief or conviction that its finding was true, we must consider
whether disputed evidence is such that a reasonable factfinder could not have
resolved it in favor of the finding.  Id.  If, in light of the entire record, the
disputed evidence that a reasonable factfinder could not have credited in favor
of the finding is so significant that a factfinder could not reasonably have
formed a firm belief or conviction in the truth of its finding, then the
evidence is factually insufficient.  Id.  If we reverse on factual sufficiency grounds,
then we must detail in our opinion why we have concluded that a reasonable
factfinder could not have credited disputed evidence in favor of its
finding.  Id. at 266‑67.

1. 
Sufficiency Of The Evidence Under Section 161.001(1)

Appellant=s points three through eight contest the legal and factual sufficiency
of the evidence to meet the statutory requirements for involuntary termination
of parental rights.  Tex. Fam. Code Ann. ' 161.001(1)(D), (E), (N). The State asserts that the evidence was
amply sufficient to terminate Appellant=s parental rights to J.A. 








The relevant inquiry for
termination under section 161.001(1)(E), the endangering conduct ground, is
whether evidence exists that the endangerment was the direct result of the
parent=s conduct, including acts, omissions, or failures to act.[15]  Tex.
Fam. Code Ann. '
161.001(1)(E); In re J.T.G., 121 S.W.3d 117, 125 (Tex. App.CFort Worth 2003, no pet.). 
Termination must be based on more than a single act or omission; it
requires a voluntary, deliberate, and conscious course of conduct.  J.T.G., 121 S.W.3d at 125.  However, it is not necessary that the parent=s conduct be directed at the child or that the child actually suffer
injury.  Boyd, 727 S.W.2d at 533; J.T.G.,
121 S.W.3d at 125.








The specific danger to the
child=s well‑being may be inferred from parental misconduct alone,
including conduct that subjects the child to a life of uncertainty and
instability.  Boyd, 727 S.W.2d at
533; In re R.W., 129 S.W.3d 732, 738-39 (Tex. App.CFort Worth 2004, pet. denied) (considering drug and alcohol abuse in
endangerment finding).  Drug use and its
effect on a parent=s life and
ability to parent may establish an endangering course of conduct.  R.W., 129 S.W.3d at 739; J.T.G.,
121 S.W.3d at 125‑26; see also In re S.D., 980 S.W.2d 758, 763
(Tex. App.CSan Antonio
1998, pet. denied) (holding that illegal drug use and frequent parole
violations provide sufficient evidence of endangerment).  A parent=s decision to engage in illegal drug use during the pendency of a
termination suit, when the parent is at risk of losing a child, supports a
finding that the parent engaged in conduct that endangered the child=s physical or emotional well‑being.  In re J.J.O., No. 2‑03‑00267‑CV,
2004 WL 966317, at *4 (Tex. App.CFort Worth May 6, 2004, no pet.) (mem. op.).

Evidence of criminal conduct,
convictions, and imprisonment is also relevant to the issue of whether a parent
engaged in an endangering course of conduct. 
J.T.G., 121 S.W.3d at 133. 
While imprisonment alone does not constitute an endangering course of
conduct, it is a fact properly considered on the endangerment issue.  Boyd, 727 S.W.2d at 533-34; R.W.,
129 S.W.3d at 743‑44.  Routinely
subjecting a child to the probability that he will be left alone because his
parent is in jail, whether because of the continued violation of probationary
conditions, or because of a new offense arising from illegal drug use,
endangers the child=s physical
and emotional well‑being.  See
S.D., 980 S.W.2d at 763.  However,
the relationship of the parent and child, as well as efforts to improve or
enhance parenting skills, are also relevant in determining whether a parent=s conduct results in Aendangerment@ under
section 161.001(1)(E), even when the parent is incarcerated.  In re D.T., 34 S.W.3d 625, 640 (Tex.
App.CFort Worth 2000, pet. denied).








In D.T., the mother
tried to ensure her child=s safety by
contacting the Texas Department of Protective and Regulatory Services (TDPRS)
to request temporary placement for her son after she was arrested, and she
attempted to comply as fully as possible with the goals and objectives TDPRS
required to facilitate reunification.  Id.  Like Appellant, while in prison, D.T.=s mother wrote letters to inquire about her child and to request
photographs and visits and participated in classes and counseling sessions.  Id. 
However, the underlying offense for which D.T.=s mother went to prison was writing bad checks, not using or
possessing illegal drugs.  Id. at
637.  And in D.T., TDPRS conceded
that the mother complied in all possible respects with the service plan.  Id. at 640.

In contrast, even before she
began abusing drugs and alcohol, Appellant was arrested twice for misdemeanor
theft.  She served jail time on one of
the offenses because she was unable to pay her probation fees, leaving J.A.,
then approximately one year old, with a relative.  She was released to do community service for
the other offense, but failed to complete it. 
These acts are more similar to the parents in S.D., who, after
their shoplifting and forgery offenses, failed to report, or to perform their
community service, or to make required payments.  980 S.W.2d at 763.








Also similar to the parents
in S.D., Appellant admitted using drugs while J.A.=s primary caretaker, and while he was at home with her.[16]  See id.  Appellant was arrested twice in 2004 for
methamphetamine possession, which she used while pregnant with another child,
like the mother in S.D., who used heroin while pregnant.  Id. 
The trial court could have reasonably concluded that this drug abuse and
its effects on her ability to parent contributed significantly to the overall
course of endangering conduct.  See
R.W., 129 S.W.3d at 739; J.T.G., 121 S.W.3d at 125‑26.








After J.A. was removed from
her, Appellant showed up high on methamphetamine to two of her arranged visits
with him.  And because she had missed at
least one visit with J.A., CPS imposed a restriction that she had to actually
show up at the office first before J.A. would be brought.  She failed to complete the new service plan
CPS developed for her before she was arrested and re-incarcerated, first for
failing to stay current on her probation fees and then later for testing
positive for methamphetamine.  The trial
court could have reasonably considered her decision to continue engaging in
illegal drug use, even when faced with the risk of losing J.A. permanently, as
support for a finding of endangering conduct. 
In re J.J.O., 2004 WL 966317, at *4.        Appellant testified that she was prepared to say that she
would never again use drugs, but when asked whether based on her history, the
court ought to believe her, replied, A[b]ased on my history, probably not.@  She also testified that even
if her rights to J.A. were terminated, she would still complete her drug
treatment program, finish her probation, and live a normal lifestyle.

Reviewing this evidence in
the light most favorable to the finding and judgment, we conclude that a
factfinder could reasonably form a firm belief or conviction that Appellant=s acts, omissions, and failures to act endangered J.A.=s physical or emotional well-being. 
J.F.C., 96 S.W.3d at 265‑66; J.T.G., 121 S.W.3d at
125.  Her undisputed drug abuse while
J.A.=s primary caretaker, while pregnant, and then after J.A. was removed
from her care was legally sufficient to constitute a course of conduct that
endangered his physical and emotional well-being.  We overrule Appellant=s fifth point.

In light of the entire
record, there was also factually sufficient evidence, on the same facts, to
warrant the finding of endangerment.  The
principal disputed evidence here, Appellant=s ability to avoid illegal drug use once released from prison and to
parent J.A., is such that a reasonable factfinder could have resolved it in
favor of the endangerment finding and the judgment.  J.F.C., 96 S.W.3d at 266.   We overrule Appellant=s sixth point.

2. 
Sufficiency Of The Evidence Under Section 161.001(2)

Appellant also challenges the
trial court=s finding
that termination was in the best interest of the child under 161.001(2), in an
unnumbered ninth point. 








The purpose of the State=s intervention in the parent‑child relationship is to protect
the best interest of the child, not to punish parents for their conduct.  In re A.V., 113 S.W.3d 355, 361 (Tex.
2003).  Although the termination suit can
result in a parent=s loss of
her legal relationship with the child, the primary focus is protecting the
child=s best interests.  Id.  Nonexclusive factors that the trier of fact
in a termination case may use in determining the best interest of the child
include:

(1)    the desires of the child;

(2)    the emotional and physical needs of the child now and in the
future; 

(3)    the
emotional and physical danger to the child now and in the future; 

 

(4)    the parental abilities of the individuals seeking custody;

(5)    the
programs available to assist these individuals to promote the best interest of
the child;

 

(6)    the
plans for the child by these individuals or by the agency seeking custody;

 

(7)    the stability of the home or proposed placement;

(8)    the
acts or omissions of the parent which may indicate that the existing parent‑child
relationship is not a proper one; and

 

(9)    any excuse for the acts or omissions of the parent.








Holley v. Adams, 544 S.W.2d 367, 371‑72 (Tex. 1976).  These factors are not exhaustive; some listed
factors may be inapplicable to some cases; other factors not on the list may
also be considered when appropriate.  C.H.,
89 S.W.3d at 27.  Furthermore, undisputed
evidence of just one factor may be sufficient in a particular case to support a
finding that termination is in the best interest of the children.  Id. 
On the other hand, the presence of scant evidence relevant to each Holley
factor will not support such a finding.  Id.

Here, J.A.=s desires are unknown.  However,
the CPS caseworker testified that when asked if he knew who his mother was,
J.A. pointed to a picture of his then-foster parent.  As to his physical and emotional needs, at
the time of trial, Appellant was uncertain about whether she would be allowed
to keep J.A. at a halfway house with her, or whether she would be in a position
to meet any of J.A.=s needs,
financial, emotional, or otherwise.[17]








Although she testified that
she realized J.A. Adoesn=t deserve any of this and I=m willing to do whatever it takes to change,@ and acknowledged that it was her fault that she continued to use
drugs while her CPS case was open, Appellant admitted to having an addictive
personality.  With regard to J.A.=s current and future emotional and physical danger, although Appellant
first refused to consider the possibility that she might relapse, when asked
about why she came to two visits high, she responded, AI guess because I was such in shock of him being gone, I didn=tCI didn=t know where to turn and I turned the wrong way and I see that now.@  She stated that she would not
make that same choice if she received another shock, but then agreed that Aanything can happen.@

At the time of trial, J.A.
was in a dual‑licensed foster home, and the CPS caseworker, Wright,
testified that it was her understanding that his current foster parents wanted
to adopt him.  In spite of subsequent
efforts in prison to improve her parenting skills, when asked about what she
would do differently when released, Appellant did not say that she would put
J.A. first.  Cf D.T., 34 S.W.3d at
640. 

Reviewing this evidence in
the light most favorable to the finding and judgment, we conclude that a
factfinder could reasonably form a firm belief or conviction that termination
was in J.A.=s best
interest.  J.F.C., 96 S.W.3d at
265‑66.  In light of the entire
record, we conclude that the trial court could have reasonably formed that same
firm belief or conviction in spite of any contrary testimony by Appellant.  Id. at 266.  We overrule Appellant=s ninth point.








We do not reach Appellant=s remaining legal and factual sufficiency points under section
161.001(1)(D) and (N), because only one predicate finding under section
161.001(1) is necessary to support a judgment of termination when there is also
a finding that termination is in the child=s best interest.  See Tex. R. App. P. 47.1; In re A.V.,
113 S.W.3d at 362.

B. 
Abuse Of Discretion

In her first two points,
Appellant contends that the trial court abused its discretion in denying her
motion for a continuance and for an extension of the dismissal date, despite a
showing of sufficient cause.  The State
counters that the trial court did not abuse its discretion and that the motion
was neither verified nor supported by affidavit.








To determine whether a trial
court abused its discretion, we must decide whether it acted without reference
to any guiding rules or principles; in other words, whether the act was
arbitrary or unreasonable.  Downer v.
Aquamarine Operators, Inc., 701 S.W.2d 238, 241‑42 (Tex. 1985), cert.
denied, 476 U.S. 1159 (1986). 
Whether the trial court grants or denies a motion for continuance is
within its sound discretion.  See BMC
Software Belg., N.V. v. Marchland, 83 S.W.3d 789, 800 (Tex. 2002); Villegas
v. Carter, 711 S.W.2d 624, 626 (Tex. 1986); see also In re E.L.T.,
93 S.W.3d 372, 374 (Tex. App.CHouston [14th Dist.] 2002, no pet.). 
The trial court=s action in
denying a continuance will not be disturbed unless the record discloses a clear
abuse of discretion.  State v. Wood
Oil Distrib. Inc., 751 S.W.2d 863, 865 (Tex. 1988); Royal Mortgage Corp.
v. Montague, 41 S.W.3d 721, 738 (Tex. App.CFort Worth 2001, no pet.).

A motion for continuance
shall not be granted except for sufficient cause supported by an affidavit,
consent of the parties, or by operation of law. 
Tex. R. Civ. P. 251.  If a motion for continuance is not made in
writing and verified, it will be presumed that the trial court did not abuse
its discretion in denying the motion.  See E.L.T., 93 S.W.3d at 375.  Generally, when the movant fails to provide
an affidavit in support of the motion, the appellate court presumes the trial
court did not abuse its discretion in denying the motion for continuance.  Villegas v. Carter, 711 S.W.2d 624 at
626; Sw. Country Enters., Inc. v. Lucky Lady Oil Co., 991 S.W.2d 490,
493 (Tex. App.CFort Worth
1999, pet. denied).  If appellant provides
no record of the evidence presented to the trial court, we must presume that
the evidence supports the ruling.  See
Wil‑Roye Inv. Co. II v. Washington Mut. Bank, F.A., 142 S.W.3d 393,
401 (Tex. App.CEl Paso 2004,
no pet.); In re Guardianship of Berry, 105 S.W.3d 665, 667 (Tex. App.CBeaumont 2003, no pet.).








Here, Appellant requested a
continuance without a supporting affidavit. 
Because Appellant did not comply with rule 251, the trial court did not
abuse its discretion in denying the motion. 
E.L.T., 93 S.W.3d at 375. 
Appellant also did not provide a record of the evidence presented to the
trial court at the hearing; therefore we must presume that the evidence supports
the ruling.  Wil‑Roye, 142
S.W.3d at 401.  We overrule Appellant=s first point.

The trial court may grant an
extension if it finds that Aextraordinary circumstances necessitate the child remaining in the
temporary managing conservatorship of the department and that continuing the
appointment of the department as temporary managing conservator is in the best
interest of the child.@  Tex.
Fam. Code Ann. ' 263.401(b)
(Vernon Supp. 2006).  If the court makes
these findings, it may retain the suit on the court=s docket for an additional 180 days after its one-year deadline.  Id.

Because an extension of the
dismissal date is similar to a continuance, and section 263.401(b) does not
indicate which appellate standard of review to apply, we apply the abuse of
discretion standard.  See In re A.R.,
No. 02-03-00235-CV, 2004 WL 40627, at *1 (Tex. App.CFort Worth Jan. 8, 2004, pet. denied) (mem. op.).  In A.R., we held that when no record
was made of the hearing on the motion, although the order denying it recited
that the court had heard evidence and argument, there was no competent evidence
in the record on appeal to determine whether an abuse of discretion had
occurred, and therefore nothing had been preserved for our review.  Id; see also Berry, 105 S.W.3d at
667.








Here, the hearing on
Appellant=s motion for
an extension of the dismissal date occurred on November 8, 2005.  The hearing was not recorded.  Unlike the order in A.R., the order in
this case did not recite that the court had heard evidence and argument.  2004 WL 40627, at *1.  But because Appellant did not provide a
record of the hearing, we must presume that the evidence supported the trial
court=s ruling and that therefore the trial court did not abuse its
discretion in denying her motion for an extension of the dismissal date.  Wil‑Roye, 142 S.W.3d at
401.  We overrule Appellant=s second point.

 

CONCLUSION

Having held that there is
sufficient legal and factual evidence upon which the trial court could base its
order to terminate Appellant=s parental rights to J.A., and that the trial court did not abuse its
discretion by denying her motion for a continuance and for an extension of the
dismissal date, we affirm the trial court=s order terminating Appellant=s parental rights.

 

 

 

DIXON W. HOLMAN

JUSTICE

 








PANEL
B:  DAUPHINOT, HOLMAN, and GARDNER, JJ.

 

DELIVERED:  November 2, 2006    











[1]See Tex.
R. App. P. 47.4.





[2]To protect the privacy of the
parties involved in this appeal, we identify the child by initials only.  See Tex.
Fam. Code Ann. ' 109.002(d) (Vernon 2002).





[3]These offenses did not involve drug
use.  Appellant says they were caused by Ajust being stupid.@





[4]Neglectful supervision allegations
in January and May 2003 were ruled out by CPS; CPS ruled an allegation in
August 2003 unable to determine.  In
January and February 2004, CPS found reason to believe neglectful supervision.





[5]Appellant testified that she used
alcohol and methamphetamine, but not marijuana.





[6]Appellant described the incident
that triggered sending J.A. to stay with Appellant=s uncle as follows: she had asked a
friend to babysit for her and paid in advance because she would probably be at
work most of the evening.  She said that
when she returned home the next morning, the friend had Aapparently told the apartment
complex that [she] was missing.@





[7]Appellant did not recall the
conditions under which J.A. was returned to her custody, nor the name of the
caseworker who gave her permission.





[8]She testified that in the fall of
2004, she used methamphetamine A[w]henever I could get some.@ 
She also testified that she did not seek help from CPS for her addiction
in 2004 because AI guess at the time I wasn=t ready and now I am.@





[9]At the hospital, she told the CPS
caseworker that J.A. was with his father, visiting his paternal grandmother in
Kansas.  After CPS discovered this was
untrue, she told the caseworker that J.A. might be with a paternal aunt in a
different city in Kansas.  He was not
there either.  CPS found J.A. with
Appellant and J.A.=s alleged biological father,
Christopher, at an apartment in Hurst on January 27, 2005.





[10]Appellant testified that she moved
often because she did not have a stable job and was not earning enough funds to
pay her rent and bills.  She testified
that she Agot evicted a couple of times.@





[11]The date listed on the plan is
February 18, 2005.





[12]Appellant testified that she was
not aware that her caseworker had gone on maternity leave.





[13]The original case ran from January
27, 2005 through January 27, 2006.  With
the extension, it would have run until July 27, 2006.  Appellant was projected to be released from
SAFP in February 2006 and then to spend three months at a halfway house.





[14]The rights of J.A.=s alleged biological father,
Christopher, were also terminated, but he did not appeal.  Appellant and Christopher had a history of
domestic violence in their relationship. 
In 2002, after J.A. was born, Appellant sought and received a protective
order for two years against Christopher. 
Appellant left J.A. with Christopher when she went into labor in January
2005; Christopher was also the second child=s biological father.





[15]Under section 161.001(1)(E), the
court may order termination of the parent-child relationship if the court finds
by clear and convincing evidence Athat the parent has engaged in conduct . . . which
endangers the physical or emotional well-being of the child.@ 
Tex. Fam. Code Ann. '
161.001(1)(E).





[16]Appellant testified that she would
use methamphetamine while J.A. was  Ataking a nap or something,@ in the same house, although not in
the same room with her, and that there had been instances when she used drugs Awhere he was with the babysitter,
and before I had went to work, I had used with friends.@





[17]Although not addressed at trial,
there is an indication from J.A.=s service plan that he does have some special needsCthere are references to a speech
delay and limited hearing.